IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-cv-477-BO

KAHLEIGHIA N. ROGERS, *et al.*,        )
                                       )
            Plaintiffs,                )
v.                                     )        O R D E R
                                       )
CUMBERLAND COUNTY                      )
DEPARTMENT OF SOCIAL SERVICES,         )
*et al.*,                              )
                                       )
            Defendants.                )
_____ )

This matter is before the Court on the Memorandum and Recommendation ("M&R") of
United States Magistrate Judge Robert B. Jones, Jr. [DE 14]. Plaintiffs have also filed motions to
amend the complaint [DE 7, 17] and motions to appoint counsel [DE 8, 9, 18]. For the following
reasons, the Court adopts the M&R in its entirety, grants the motions to amend the complaint, and
denies the motions to appoint counsel.

## BACKGROUND

Plaintiff Sondra Bruton is the mother of plaintiff Kahleighia Rogers, the mother of the
minor plaintiffs. Plaintiffs are all citizens of North Carolina. On March 21, 2018, Rogers gave birth
to K.G. in Cumberland County. K.G. was born prematurely, was admitted to the intensive care
unit, and tested positive for THC. Defendant Tamika Walker, a social worker for the Cumberland
County Department of Social Services (CCDSS), visited Rogers's home in Harnett County and
informed Rogers's stepfather that she was there to ensure that K.G. had a proper place to reside
upon his release from the hospital.

On April 6, 2018, Walker told Bruton that CCDSS had filed a petition for non-secure custody of K.G. and L.R. and K.B., who were other minor children living with Bruton at the time. Bruton turned the children over to CCDSS four days later. Following a hearing on April 11, 2019, K.G. was placed into foster care so that a caregiver could be trained to care for a premature baby, while L.R. and K.B. were returned to Bruton. K.G. remained in foster care for two months, as K.G.'s father was unable to pass a drug test and refused to take a paternity test. A hearing was held in July 2018, but Rogers was not present. A consent agreement indicated that Rogers agreed that the children were neglected, but she now denies that allegation. In October 2018, K.G.'s father received full legal custody of K.G. On June 12, 2019, a hearing was scheduled to determine whether L.R. and K.B. would be released from non-secure custody, but the hearing was continue because defendant Carrie Carter, the *guardian ad litem* (GAL), made an unscheduled home visit while no one was at home.

On June 21, 2019, GAL Carter made another unscheduled home visit, this time with defendant Shakeisha McClain, a CCDSS social worker, and did not receive an answer at the door. *Id.* McClain left a message on Bruton's voicemail threatening to remove the children if she did not answer. *Id.* Carter and McClain contacted the Harnett County Sheriff's Office, and a deputy arrived and banged loudly enough on the door to wake Bruton. Once inside, McClain threatened Bruton. *Id.* After McClain left, Bruton called defendant Danielle Farrior, a CCDSS supervisor, and was accused of being rude to McClain. Farrior told Bruton that she and McClain would return to Bruton's home to conduct a safety check that afternoon.

On June 22, 2019, an investigator told Bruton that there was a report that Bruton was sleeping all day and leaving the children unattended, that there was an unknown male in the home, and that Bruton did not have a valid driver's license. On June 23, 2019, Farrior contacted Bruton

2

regarding the safety check, and Bruton informed her that McClain had made a false report and that the investigator had already completed the safety check. Farrior stated that the safety check had not been completed and scheduled it for the following day. No one contacted Bruton on June 24, and Farrior and McCain attempted to complete the safety check on June 26 instead. Bruton was not at home, but she offered to send a neighbor to help them complete the safety check. Farrior refused Bruton's offer, and instead told Bruton that they would have to remove the children because she was never at home for the unscheduled visits and because her license was suspended. Defendant Brandi Briza, the CCDSS Program Manager, and Terri Morton, an attorney, authorized the removal, and the children were placed in foster care. Bruton spoke with Briza, who told her she would not be getting the children back; made a formal complaint to the then-section chief of the CCDSS; spoke with Sandy Connors, an assistant director at CCDSS, who advised Bruton that removal was not necessary and that she would refer the matter to defendant Brenda Reid Jackson, director; and left a voicemail for Reid Jackson, who responded with an apology email.

A hearing was held on July 14, 2019, at which Farrior stated that the children had informed her that Bruton had held them under cold water as a form of punishment and beaten them with a belt. The court ordered a forensic examination of the children, which revealed no evidence of abuse. The children were returned after two supervised visits, drug tests of Bruton and Rogers, and a home study. Although Furrior told Bruton over the phone that the case would be closed at the next hearing, CCDSS informed the court at an October 19 hearing that they needed to monitor the new residence Bruton had recently moved to.

In January 2020, an investigator visited Bruton and stated that there were allegations that she was beating the children with sticky bushes, was transporting them without a license, and had no source of income. At a CCDSS meeting in February 2020, defendant Megan Phillips, a CCDSS

social worker, stated that the children had been removed in June 2019 after a forensic report found that they had been improperly disciplined. There had never been such a report, and the complaint alleges that Phillips acted with malice to discredit Bruton before the panel of CCDSS supervisors. *Id.* CCDSS advised Leon Williams, an investigator, not to close the case and not to attend the next hearing. After Williams left the CCDSS, the next investigator closed the case two weeks after the hearing, but the case was continued.

On June 18, 2020, Rogers gave birth to another infant, K.R., who tested positive for THC. *Id.* On June 22, 2020, defendant Tenise Lampley, a CCDSS assessor, completed a Temporary Safety Plan at Bruton's home and told Bruton that she could pick the infant up from the hospital if her background check was good. On June 24, 2020, Phillips told Bruton that the infant would be released from the hospital at 2:30 p.m. and that Bruton should arrive early to receive training for infants exposed to THC. Lampley told Bruton that Phillips has scheduled an emergency ex parte hearing. Bruton was suspicious that both events were at the same time, and she attended the hearing with Rogers. Morton represented CCDSS and Phillips at the hearing, and they requested that the court order non-secure custody and place K.R. in foster care. Bruton informed the court of what she believed to be two years of retaliation and harassment by CCDSS. The court placed the child in foster case because Phillips stated that she was concerned that Rogers would attempt to remove K.R. from Bruton's care, and defendant Mariamarta Conrad, GAL Attorney Advocate, agreed with the decision.

Following this hearing, Bruton began a social media campaign to expose CCDSS's allegedly unlawful removal of children, and she included photos of CCDSS employees taken from their Facebook pages. Phillips advised the court at a June 29, 2020 hearing that Bruton had violated child protection laws and shared confidential information, and GAL Conrad agreed. The court kept

4

the infant in foster care and banned Bruton from having contact with the child. At the hearing, Phillips also stated that she would be seeking to remove the two older children at the next hearing because they were not attending play therapy services and because of a conflict between Bruton and Rogers. On July 13, 2020, Phillips told Bruton that she would be taking the children to a play therapy session, but Bruton told Phillips that Valarie Johnson of the North Carolina Department of Health and Human Services had advised that the children not attend any non-emergency appointments due to COVID-91. However, Phillips attempted to transport the children to therapy in an alleged effort to unlawfully remove them and place them in foster care.

On July 16, 2020, CCDSS and its employees involved the police in a search of Bruton's home. They attempted to force entry and threatened to imprison Bruton if she did not turn over the children, but Bruton stated that she would not turn over the children without an order. Defendant Michael Simmons, a CCDSS attorney, deceived Rogers's attorney by stating that he did have an order for removal. Bruton subsequently turned the minors in to Phillips at the Cumberland County Courthouse, and Phillips and Simmons requested that Bruton be barred from all contact with the children. The complaint further alleges that defendant Virgie DeVane-Hayes, a supervisor with CCDSS, stated in a recorded conversation that one of the infants was deemed neglected because she tested positive for THC, but argues that this result is contrary to law. Additionally, the infant has been in foster care due to CCDSS continuances, although the law requires that evidence of abuse, neglect, or dependency must be shown within sixty days, unless that time is extended for good cause. The complaint alleges that no hearing has been held because CCDSS does not have evidence.

Plaintiffs allege the following claims: (1) violation of their rights to equal protection against all defendants; (2) violation of their rights to due process against all defendants; (3) a Fourth

Amendment violation against all defendants; (4) negligence against attorneys Terri Morton, James Dill, and Michael Simmons and all CCDSS employees and agents; (5) gross negligence against all defendants; (6) negligent supervision against the CCDSS director, Cumberland County, the attorneys, and all CCDSS supervisors; (7) gross negligent supervision against Cumberland County, Reid Jackson, all CCDSS attorneys, and GAL Conrad; (8) negligent misrepresentation against Reid Jackson and all CCDSS attorneys, supervisors, and social workers; (9) harassment and retaliation against all defendants; (10) negligent hiring and retention against Cumberland County; (11) gross negligent retention and hiring against Cumberland County; (12) fraud and fraud upon the court against all defendants; (13) breach of contract by Rogers against defendant Antoine Edwards, an attorney; (14) breach of contract by the minor plaintiffs against GAL Carter and GAL Attorney Advocate Conrad; and (15) constructive fraud against all defendants. Plaintiffs further allege that Cumberland County is liable for the actions of CCDSS and its employees under the theory of *respondeat superior*, and they seek punitive damages and attorney's fees. Plaintiffs request that the children be released from Cumberland County non-secure custody immediately and allege damages in excess of $20,000,000.

On November 23, 2020, Magistrate Judge Jones filed an M&R allowing the applications to proceed *in forma pauperis* but recommending that some claims be dismissed. [DE 14]. Specifically, the M&R recommended that all claims against CCDSS and the harassment and retaliation claims be dismissed with prejudice. It also recommended that the following claims be dismissed without prejudice: the equal protection claim, Bruton's due process claim, Rogers's Fourth Amendment claim, all state law claims asserted against Cumberland County and its employees in their official capacities, the negligence and negligent misrepresentation claims, the negligent supervision claim and the claims for negligent hiring and retention, the claim for fraud

upon the court, the minor plaintiffs' breach of contract claims, the fraud claim except against Simmons, and the constructive fraud claims. It recommended that the remaining claims be allowed to proceed. Plaintiffs timely filed an objection to the M&R. [DE 16]. Plaintiffs objected to the dismissal of the state law claims against Cumberland County and its employees, the equal protection claim, the fraud and constructive fraud claims, and the minor plaintiffs' breach of contract/malpractice claim, and the negligence and negligent misrepresentation claims, but accepted all other stated recommendations.

DISCUSSION

Motions to Appoint Counsel

Plaintiffs have filed three motions to appoint counsel. There is no constitutional right to counsel in civil cases, and courts should exercise their discretion to appoint counsel for *pro se* civil litigants "only in exceptional cases." *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975) (citation omitted). The existence of exceptional circumstances justifying appointment of counsel depends upon "the type and complexity of the case, and the abilities of the individuals bringing it." *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989). Considering these factors, the Court finds that this case is not one in which exceptional circumstances merit appointment of counsel. Therefore, plaintiffs' motions to appoint counsel are denied.

First Motion to Amend Complaint

Plaintiffs filed their first motion to amend the complaint prior to Judge Jones's M&R. Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend his pleadings as a matter of right under certain circumstances or with the opposing party's consent or with leave of the court. Fed. R. Civ. P. 15(a)(1)–(2). *Id.* at 15(2). Further, Rule 15 directs that leave to amend be

freely given when justice requires. "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citations omitted). A court should only deny leave to amend a pleading when the amendment would be prejudicial to the opposing party, where there has been bad faith on the part of the moving party, or when the amendment would be futile. *Johnson v. Oroweat Food Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). For good cause shown, plaintiffs' first motion to amend the complaint is granted, and the Court uses the First Amended Complaint in considering the M&R, as Judge Jones did.

<u>Memorandum and Recommendation</u>

A district court is required to review an M&R *de novo* if the plaintiff specifically objects to it or in cases of clear error. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149–50 (1985). The district court is only required to make a *de novo* determination of those specific findings to which the plaintiff has actually objected. *See Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983). Here, plaintiffs have objected to several of the recommendations made by Judge Jones. Specifically, plaintiffs object to the dismissal of the claims against Cumberland County and its employees, the equal protection claim, the fraud and constructive fraud claims, the minor plaintiffs' breach of contract/malpractice claim, and the negligence and misrepresentation claims.

*Objections to Dismissal of All State Law Claims Alleged Against Cumberland County and Its Employees, to Dismiss the Equal Protection Claim, and to Dismiss Claims for Negligence and Negligent Misrepresentation*

Judge Jones recommended in the M&R that all of the state law claims asserted against Cumberland County and its employees in their official capacities be dismissed because there is no allegation that Cumberland County has waived its governmental immunity; that the equal

protection claim be dismissed for failure to allege how plaintiffs were treated differently; and that the negligence and negligent misrepresentation claims be dismissed because the allegations appear to be based on intentional conduct and defendants have public official immunity for non-malicious conduct. In their objections, plaintiffs state that they have amended their complaint to correct these problems. However, these are not proper objections. Instead, plaintiffs are agreeing with the recommendations stated in the M&R while stating that the conclusions would be different if plaintiffs could amend the complaint. Therefore, this Court adopts the recommendations of the M&R to dismiss all state law claims alleged against Cumberland County and its employees in their official capacities, the equal protection claim, and the negligence and negligent misrepresentation claims, but it considers plaintiff's second motion to amend below.

*Objection to the Claim for Fraud and Constructive Fraud Against All Defendants*

Judge Jones recommends that the fraud claims be dismissed, except for the claim for Simmons' allegedly deceitful statement that there was a court order for the removal of the children, because plaintiffs failed to show that any other false misrepresentations of fact actually deceived plaintiffs. In their objections, plaintiffs argue that they did not learn about applicable child welfare laws until after June 26, 2019, when the children were removed from Bruton's home. DE 16, p. 3. In other words, plaintiffs object to Judge Jones finding that plaintiffs were not actually deceived by NCDHHS's representation that they could remove the children whenever they wanted and that a court would ultimately decide the issue of custody.

In order to state a claim for fraud under North Carolina law, a plaintiff must plead with particularity facts showing (1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. *Forbis v. Neal*, 361 N.C. 519, 526–27 (2007) (citation

9

omitted). Here, the Court finds that plaintiffs were not actually deceived by NCDHSS's statement. Immediately following the removal of the minor plaintiffs from Bruton's home, Bruton spoke with Briza, made a formal complaint to the then-section chief of the CCDSS, spoke with Connors, and left a voicemail for Reid Jackson. If plaintiffs had actually been deceived by the alleged misrepresentation, they would not have proceeded to immediately contact and complain to four different individuals. The facts in this case indicate that plaintiffs did not rely on this alleged misrepresentation, and this fraud claim fails.

In the M&R, Judge Jones recommends that the claims of constructive fraud be dismissed as to the CCDSS defendants because there is no fiduciary relationship between DSS employees and families, *see Hogan v. Cherokee Cty.*, No. 1:18-CV-96, 2019 U.S. Dist. LEXIS 52682, at *20–21 (W.D.N.C. Feb. 27, 2019) (finding that Department of Social Services employees do not have a confidential or fiduciary relationship with families under investigation, and as to the GALs, based on the facts alleged, it is unclear how the conduct of the GALs may have taken advantage of the position of trust with the children. In their objections, plaintiffs merely reiterate their allegations in favor of the constructive fraud claims, but do not object to any of the legal or factual findings of Judge Jones. Therefore, the claim of constructive fraud is dismissed.

*Objection to Recommendation to Dismiss the Claim of Breach of Contract/Malpractice Against GAL Carter and GAL Advocate Conrad*

Plaintiffs allege that GAL Carter and GAL Attorney Advocate Conrad had a duty to investigate whether the allegations of the petition were true or false and that they breached that duty by supporting the unlawful removal of the children. Second Am. Compl. p. 48. "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of [the] contract." *Wells Fargo Ins. Servs. USA, Inc. v. Link*, 372 N.C. 261, 276 (2018) (citations

omitted). GALs are appointed by the court to represent juveniles when a juvenile is alleged to be abused or neglected, and when a non-attorney is appointed as the GAL, an attorney is also appointed "to assure protection of the juvenile's legal rights throughout the proceeding." N.C. Gen. Stat. § 7B-601.

The complaint does not allege the existence of a contract between the minor plaintiffs and Conrad or Carter. In their objections, plaintiffs argue that there was "an implied relationship of trust" between the GALs and the minor plaintiffs, but they admit that there was no contract. DE 16, p. 9. However, this implied relationship of trust does not create a contract, and therefore cannot support a claim for breach of contract. Therefore, this breach of contract claim is dismissed for failure to state a claim.

Finding no other specific objections to the findings of the M&R, the Court considers whether the M&R is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). The Court finds no clear error in the remainder of Judge Jones's M&R, and therefore adopts Judge Jones's recommendations to dismiss with prejudice all claims against CCDSS and the harassment and retaliation claims and to dismiss the following claims without prejudice: the equal protection claim; Bruton's due process claim; Rogers's Fourth Amendment claim; all state law claims against Cumberland County and its employees in their official capacities; the negligence and negligent misrepresentation claims; the negligent hiring, retention, and supervision claims; the claim for fraud upon the court; the minor plaintiffs' breach of contract claims; the constructive fraud claim, and all fraud claims, except as to Simmons's allegedly deceitful statement that there was a court order for the removal of the children.

Second Motion to Amend

For good cause shown, the second motion to amend the complaint is granted. In the amended complaint, plaintiffs make several additions or amendments. Specifically, they have added to their gross negligence claim, they have added a statement of waiver of immunity for Cumberland County, they have added a statement that all individual defendants acted in both their individual and official capacities, they have amended and added to their claim for negligent hiring and retention, and they have changed the minor plaintiffs' breach of contract claim against defendants GAL Carter and Attorney Advocate Conrad to a legal malpractice claim involving the same parties.

A timely-filed amended pleading supersedes the original pleading. *Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001) ("The general rule . . . is that an amended pleading supersedes the original pleading, rendering the original pleading of no effect."). The Court is charged with liberally construing a pleading filed by *pro se* litigants to allow for the development of a potentially meritorious claim. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Noble v. Barnett*, 24 F.3d 582, 587, n.6 (4th Cir. 1994) (citations omitted). Plaintiffs proceeding *in forma pauperis*, however, must "meet certain minimum standards of rationality and specificity." *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). Therefore, since plaintiffs are proceeding *in forma pauperis*, the court conducts a frivolity review of the case pursuant to 28 U.S.C. § 1915(e)(2)(B) to the extent that the Second Amended Complaint differs from the First Amended Complaint. In such a review, the Court must determine whether the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from an immune defendant, and is therefore subject to dismissal. 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous if "it lacks an arguable basis in either law or fact." *See Nietzke v. Williams*,

490 U.S. 319, 325 (1989); *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2099) ("Examples of frivolous claims include those whose factual allegations are 'so nutty,' 'delusional,' or 'wholly fanciful' as to be simply 'unbelievable.'") (citations omitted). A court may dismiss all or part of any complaint which fails to state a claim upon which relief can be granted or which seeks money damages from a defendant immune from such recovery. 28 U.S.C. § 1915(e)(2)(B).

*Cumberland County's Immunity*

Plaintiffs assert multiple state law claims against Cumberland County. Under the doctrine of governmental immunity, counties and their agencies are immune from state law claims absent a waiver of immunity. *Oliver v. Harper*, No. 5:09-CT-3027-H, 2011 U.S. Dist. LEXIS 29499, at *23 (E.D.N.C. Mar. 22, 2011) (citations omitted). "Services provided by local Departments of Social Services are governmental functions to which governmental immunity applies." *Hogan* 2019 U.S. Dist. LEXIS 52682, at *11 (W.D.N.C. Feb. 28, 2019) (citing *Whitaker v. Clark*, 427 S.E.2d 142, 153 (N.C. Ct. App. 1993)); *see also Kline v. Cleveland County*, 1:19-CV-00197-MOC-WCM, 2020 U.S. Dist. LEXIS 60924, at *40 (W.D.N.C. Apr. 7, 2020) ("Because child abuse investigations are governmental in nature, counties are normally 'immune from liability for injuries caused by negligent social services employees working in the course of their duties.'") (quoting *Hare v. Butler*, 99 N.C. App. 693 (1990)).

"In order to overcome a defense of governmental immunity, the complaint must specifically allege a waiver of governmental immunity. Absent such an allegation, the complaint fails to state a cause of action." *Shupe v. Baur*, No. 7:14-CV-56-F, 2015 U.S. Dist. LEXIS 61423, at *18 (E.D.N.C. May 11, 2015) (citing *Clark v. Burke County*, 117 N.C. App. 85, 77 (1994)). "A county may waive governmental immunity by purchasing insurance, but any waiver is limited to the extent of the insurance coverage." *Perry v. Pamlico Cnty.*, 88 F. Supp. 3d 518, 532 (E.D.N.C.

2015); *see also* N.C. Gen. Stat. § 153A-435(a) (providing that a county waives its "governmental immunity, to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function."). "If 'the insurance policy does not indemnify [the] defendant against the negligent acts alleged in plaintiff's complaint, defendant has not waived its sovereign immunity.'" *Perry*, 88 F. Supp. at 532 (quoting *Doe v. Jenkins*, 144 N.C. App. 131, 135 (2001)).

Judge Jones recommended in his M&R that all tort claims against Cumberland County and its employees in their official capacities be dismissed without prejudice because there was no allegation in the complaint that Cumberland County was waived its immunity by purchasing insurance. However, in the amended complaint, as noted in plaintiffs' objections, plaintiffs allege that Cumberland County has purchased insurance and thereby waived immunity. In adopting the M&R, this Court dismissed the negligent hiring, retention, and supervision claim solely based on immunity. However, plaintiffs do not provide any information about the insurance Cumberland County has purchased, and they do not show that this insurance coverage extended to negligence claims or claims of negligent, hiring, retention, and supervision specifically. Furthermore, the allegation of Cumberland County's insurance is a legal conclusion without any supporting factual details.

The M&R stated that defendants enjoy public official immunity as to any claims against defendants in their individual capacities to the extent that they acted without malice or corruption. Plaintiffs add in their Second Amended Complaint that "each Claim for Relief against each Defendant is brought against that Defendant in both his/her individual and official capacities." Second Am. Compl. p. 38. The Court notes that, while this amendment clarifies plaintiffs' claims, it does not change alter the results of the M&R, since Judge Jones considered the claims against

defendants in their individual capacities and, as Judge Jones notes, the claims against defendants in their official capacities merge into the claims against Cumberland County.

*Legal Malpractice: All Minor Plaintiffs Against GAL Carter and GAL Attorney Advocate Conrad*

In the Second Amended Complaint, plaintiffs allege that GAL Carter and GAL Attorney Advocate Conrad violated their ethical duties and legal obligations through plaintiff in "failing to act in the best interest of each child, failing to investigate and report allegation of the petition to the court or other appropriate authorities, and failing to perform their sworn duties to protect the rights" of minor plaintiffs. Second Am. Compl. pp. 46–48. "To state a claim for legal malpractice under North Carolina law, a plaintiff must allege facts showing 'that the attorney breached the duties owed to his client . . . and that this negligence (2) proximately caused (3) damage to the plaintiff." *Southwood v. Credit Card Sol.*, No 7:09-CV-81-F, 2012 U.S. Dist. LEXIS 152146, at *27 (E.D.N.C. Oct. 23, 2012) (quoting *Rorrer v. Cooke*, 313 N.C. 338, 355 (1985). "Proof of an attorney-client relationship is essential to establishing a claim for legal malpractice." *Umphreyville v. Gittins*, 662 F. Supp. 2d 501, 510 (W.D. Va. 2009).

Here, minor plaintiffs are unable to sustain a claim of legal malpractice against Conrad and Carter. As a matter of law, there is no basis for finding an attorney-client relationship between a GAL and a ward. *McClintock v. West*, 219 Cal. App. 4th 540, 555 (Cal. App. 4th 2013); *see also Wolfe v. Grey*, C.A. No. 963, 1979 Ohio App. LEXIS 12488, at *3 (Ohio App. 4th 1979) ("There is no requirement that a guardian ad litem be an attorney, and we are not prepared to hold that the mere appointment of an attorney as guardian ad litem thereby obligates such person to function as the ward's attorney with that office's attendant powers and duties."). The GAL's duty is to act in the ward's best interests, but the GAL ultimately answers to the court and acts as an officer and

15

representative of the court. *McClintock*, 219 Cal. App. 4th at 555. Therefore, minor plaintiffs may not bring a claim of legal malpractice against Conrad and Carter.

Summary

In conclusion, for the reasons discussed above, all claims against CCDSS and the harassment and retaliation claims are dismissed with prejudice. The following claims are dismissed without prejudice:

- The equal protection claims against all defendants;

- Bruton's due process claims against all defendants;

- Rogers's Fourth Amendment claims against all defendants;

- The negligence claims against Morton, Dill, Simmons, and all CCDSS employees;

- The gross negligence claims against all defendants;

- The negligent supervision claims against CCDSS director, Cumberland County, CCDSS attorneys, and CCDSS supervisors;

- The gross negligent supervision claims against Cumberland County, Reid Jackson, CCDSS attorneys, and GAL Conrad;

- The negligent misrepresentation claims against Reid Jackson and CCDSS attorneys, social workers, and supervisors;

- The negligent hiring and retention and gross negligent hiring and retention claims against Cumberland County;

- The minor plaintiffs' breach of contract claims against Conrad and Carter;

- The minor plaintiffs' legal malpractice claims against Conrad and Carter;

- The fraud claims against all defendants except Simmons;

- The fraud upon the court claims against all defendants;

- All state law claims asserted against Cumberland County and its employees in their official capacities;

- And the constructive fraud claims against all defendants.

The following claims are allowed to proceed:

- Rogers's and the minor plaintiffs' substantive due process claim;

- Rogers's procedural due process claim relating to the July 2018 claim;

- Rogers's procedural due process claim relating to the July 2018 hearing;

- Bruton's Fourth Amendment claim for the search of her home;

- The minor plaintiffs' Fourth Amendment claim for the seizure of their persons;

- Bruton's fraud claim for Simmons's allegedly deceitful statement that there was a court order for the removal of the children; and

- Rogers's legal malpractice claim against Edwards.

CONCLUSION

For the foregoing reasons, the Court DENIES plaintiffs' motions to appoint counsel [DE 8, 9, 18], GRANTS the motions to amend complaint [DE 7, 17], and ADOPTS the Magistrate Judge's recommendations [DE 14]. The Clerk is DIRECTED to file the first proposed amended complaint [DE 7-1] as the First Amended Complaint and to file the second proposed amended complaint [DE 17-1] as the Second Amended Complaint. The Clerk is also DIRECTED to issue summons and provide the Second Amended Complaint and this order to the U.S. Marshals' Office.

SO ORDERED, this _____ day of March, 2021.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE